UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

MICHAEL LEVITIAN,                              :

                       Plaintiff,         :

      - against -                          :

SUN LIFE AND HEALTH INSURANCE        :
COMPANY (U.S.),
                Defendant.         :

------------------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED:____7/24/13____

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
GEORGE B. DANIELS**

09 Civ. 2965 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

I.    <u>Introduction</u>

       Plaintiff Michael Levitian ("Levitian") commenced this action under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, <u>et</u> <u>seq.</u>,

to recover benefits from his disability carrier, defendant Sun Life and Health Insurance

Company (U.S.) ("Sun Life").  By Memorandum Decision and Order dated February 9,

2011, Your Honor denied Sun Life's motion for summary judgment, granted Levitian's

cross-motion for summary judgment, directed Sun Life to reinstate his benefits, and

awarded him back benefits with interest.  Levitian has now moved to recover the

attorneys' fees and costs incurred in prosecuting this case, as well as prejudgment

interest.

       For the reasons set forth below, I recommend that Levitian be awarded

judgment against Sun Life in the amount of $219,885.76, consisting of $219,192 in

attorneys' fees and $693.76 in costs.  I further recommend that Levitian be awarded

prejudgment interest on his back benefits at the rate of nine percent per annum.

II.     Relevant Facts and Procedural History

    A.     Facts

        From January 8, 1998, until February 7, 2006, Levitian worked for Assured

Guaranty Corporation ("Assured"), where he eventually became the Vice President for

Database Administration.  Assured furnished certain of its employees, including Levitian,

with a group long-term disability policy through an insurance company that Sun Life

subsequently purchased.  Pursuant to that policy ("Plan"), individuals are entitled to long-

term disability benefits if they are "Totally Disabled" because they are "unable to perform

all the material and substantial duties of [their] Regular Occupation[s]."

        The Plan further provides for Sun Life to serve as the fiduciary ("Plan

Administrator") for both claims and appeals.  Sun Life consequently evaluates claims,

making final decisions regarding requests for benefits.  If a claimant disagrees with Sun

Life's decision after pursuing an appeal, his only recourse is to file a suit pursuant to

Section 502(a) of ERISA.

        On January 7, 2006, Levitian's doctors diagnosed him with carpal tunnel

syndrome, determined that he was disabled, and advised him to reduce his work hours.

His doctors further advised him that he could return to work but should not use a

keyboard for more than four hours per day.  That month, Levitian filed a claim for short-

term benefits under the Plan.  On February 7, 2006, Assured terminated Levitian.

Assured has not provided a reason for terminating Levitian, although it apparently represented to Sun Life in 2008 that his termination was unrelated to his physical condition.

Levitian subsequently submitted a claim for long-term disability benefits in May 2006.  The Plan Administrator denied Levitian's initial claim for long-term disability benefits on July 24, 2006.  When Levitian appealed that decision, Sun Life retained Sarah Coughlin, a consultant, who issued a report ("Coughlin Report") concerning Levitian's claim.  Based on her inquiries of other employers and recruiters, as well as Levitian's job description, Coughlin concluded that Levitian's position as Vice President for Database Administration required him to type for more than four hours per day.  Accordingly, on November 20, 2006, Sun Life granted Levitian's appeal, finding him "Totally Disabled," and awarded him long-term disability benefits.

Levitian subsequently obtained a new position as Chief Technology Officer at another company.  Thereafter, in 2008, Sun Life reopened Levitian's claim and commissioned a new analysis ("Pickering Report") which concluded that Levitian had been a manager at Assured.  The Pickering Report further determined that the manager of a database administrative department with fewer than two staff members would keyboard frequently, but that managers of such departments with two or more staff members were focused on managerial duties and thus would keyboard for fewer than four hours per day. (None of this information had been considered during the preparation of the Coughlin Report.)  Accordingly, Sun Life determined that if Levitian managed a team with two or

3

more staff members, his position would not have required him to type more than four hours per day and he, therefore, would not be "Totally Disabled."

Sun Life claims that the head of Assured's human resources department stated during a telephone conversation that Levitian supervised a three-member team. That manager, however, has denied making that statement, explaining that Levitian, in fact, was responsible for monitoring only one other person.  A list of Levitian's core responsibilities at Assured also indicates that he supervised no more than two people.

Nevertheless, based on the human resources manager's alleged statement and the Pickering Report, Sun Life concluded that Levitian's position required him to keyboard fewer than four hours per day.  Accordingly, on May 5, 2008, Sun Life discontinued Levitian's long-term disability benefits, finding that he was not "Totally Disabled."  Levitian appealed, but Sun Life denied his appeal on August 26, 2008.

B.     Procedural History

After Levitian filed this action, the parties cross-moved for summary judgment in May 2010.  (See ECF Nos. 22-37).

On February 9, 2011, Your Honor issued a Memorandum Decision and Order granting, in part, Levitian's motion for summary judgment, and ordering Sun Life to reinstate his benefits and award him back benefits with interest, but denying his request for attorneys' fees.  (ECF No. 38) ("Decision and Order").  As the Decision and Order explained, Sun Life's determination that Levitian was not Totally Disabled was arbitrary

and capricious because it was not supported by substantial evidence.  (Decision and Order at 10).

After Sun Life and Levitian filed unsuccessful motions to modify that decision, both sides appealed.  (ECF Nos. 51, 52).  In its decision, the Second Circuit affirmed Your Honor's determination that Sun Life's denial of benefits was arbitrary and capricious.  Levitian v. Sun Life and Health Ins. Co., 486 F. App'x 136, 139-41 (2d Cir. June 19, 2012).  The Court further noted that the five-factor test set forth in Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987), which Your Honor had relied on in the course of denying Levitian's application for attorneys' fees, was abrogated by the Supreme Court's decision in Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 130 S.Ct. 2149 (2010).  Id.  As the Court observed, although courts may apply the Chambless factors after Hardt in the course of deciding a fee application, it is error to consider only those factors in determining whether to award attorneys' fees.  (Id. at 141).  The Court of Appeals consequently remanded the case for a "new determination of Levitian's entitlement to fees," and directed that this Court "explain in writing the basis for its decision."  (Id. (citing Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 137 (2d Cir. 2001)).

Thereafter, Your Honor referred the matter to me for a report and recommendation with respect to Levitian's entitlement to attorneys' fees.  (ECF No. 54).  On November 8, 2012, Levitian filed his motion for attorneys' fees.  ((ECF Nos. 59-61).  On December 14, 2012, Sun Life filed its opposition papers. (ECF No. 63).  Finally, on

January 11, 2013, Levitian filed reply papers.  (ECF Nos. 64-65).  The motion is therefore

fully submitted.

III.    Discussion

     A.    Attorneys' Fees & Costs

        Pursuant to 29 U.S.C. § 1132(g)(1), a district court has the discretion to

award "a reasonable attorney's fee" to either party in an ERISA case.  In his application,

Levitian seeks to recover attorneys' fees in the amount of $294,258.38, which reflects a

voluntary ten percent reduction from his counsel's total indicated time charges of

$326,953.75.  (See ECF No. 61 ("Riemer Affirm.") ¶¶ 37-38; ECF No. 65 ("Riemer

Reply Affirm.") ¶ 3 & Ex. H).

        1.    General Principles

        Until the Supreme Court's decision in Hardt, courts in this Circuit were

required to consider the five factors set forth in Chambless in determining whether to

award attorneys' fees in ERISA cases.  Those factors are:

> (1) the degree of the offending party's culpability or bad faith,
> (2) the ability of the offending party to satisfy an award of
> attorney's fees, (3) whether an award of fees would deter
> other persons from acting similarly under like circumstances,
> (4) the relative merits of the parties' positions, and (5)
> whether the action conferred a common benefit on a group of
> pension plan participants.

815 F.2d at 871.  Subsequently, in Hardt, the Supreme Court held that the Chambless

factors "bear no obvious relation to [Section] 1132(g)(1)'s text or to [the Court's] fee-

shifting jurisprudence [and therefore] are not required for channeling a court's discretion

6

when awarding fees."[1]  560 U.S. 242, 130 S.Ct. at 2158 (emphasis added).  The Court did note, however, that a court "<u>may</u> consider the five factors . . . in deciding whether to award attorney's fees."  <u>Id.</u> at n.8 (emphasis added).  <u>Hardt</u> further established that a fee claimant need not demonstrate that it is the "prevailing party" to be eligible for an award.  Rather, the claimant need only show that it has achieved "some success on the merits."  <u>Id.</u> at 2156, 2159.

In this action, there is no dispute that Levitian achieved some success on the merits.  Indeed, Sun Life has been directed to reinstate his benefits and to pay back benefits with interest.  (Decision and Order at 11).  As Sun Life acknowledges, Levitian therefore is eligible for an award of fees under <u>Hardt</u>.  (ECF No. 63 ("Opp. Mem.") at 2).  The remaining issues are whether Levitian should recover attorneys' fees and, if so, the amount.

2.    <u>Award of Attorneys' Fees</u>

Although <u>Hardt</u> made clear that the Court is not <u>required</u> to do so, it still "may apply . . . the <u>Chambless</u> factors in 'channeling [its] discretion when awarding fees' under § 1132(g)(1)."  <u>Toussaint v. J.J. Weiser, Inc.</u>, 648 F.3d 108, 110 (2d Cir. 2011) (quoting <u>Hardt</u>, 130 S.Ct. at 2158).  Here, those factors plainly support the awarding of attorneys' fees to Levitian.

---

[1]    <u>Hardt</u> actually involved an appeal from the United States Court of Appeals for the Fourth Circuit.  The factors considered by courts in that Circuit, however, were virtually identical to those set forth in <u>Chambless</u>.  <u>Compare</u> <u>Quesinberry v. Life Ins. Co. of N. Am.</u>, 987 F.2d 1017, 1029 (4th Cir. 1993), <u>with</u> <u>Chambless</u>, 815 F.2d at 871.

a.    <u>Degree of Sun Life's Culpability</u>

Both this Court and the Court of Appeals found Sun Life's determination that Levitian was not "Totally Disabled" and the resulting denial of benefits to be arbitrary and capricious.  (Decision and Order at 6, 11; <u>Levitian</u>, 486 F. App'x at 139-41). Such "[a]n arbitrary and capricious determination by an administrator . . . satisfies the culpability factor" of <u>Chambless</u>.  <u>Palmiotti v. Metro. Life Ins. Co.</u>, No. 04 Civ. 718 (LTS) (JCF), 2006 WL 1637083, at *1 (S.D.N.Y. June 9, 2006).

Sun Life nevertheless urges the Court to reach a contrary conclusion, arguing that if an arbitrary and capricious denial of benefits is sufficient to establish culpability, "every prevailing Plaintiff would automatically be entitled to fees."  (Opp. Mem. at 3).  Culpability, however, is only one of several considerations.  Moreover, the arbitrary and capricious standard does not apply to every ERISA action, but, rather, only to cases in which the plan administrator has "discretionary authority to determine eligibility[.]"  <u>Hobson v. Metro. Life Ins. Co.</u>, 574 F.3d 75, 82 (2d Cir. 2009).  The general standard of review for an administrator's decision is <u>de novo</u> review.  <u>Id.</u>  Since Sun Life required Levitian to overcome a higher hurdle to prevail on the merits of his claim for disability benefits, it can scarcely argue that his success in doing so should not be considered evidence of Sun Life's culpability.

b.      Sun Life's Ability to Satisfy an Attorneys' Fee Award

Turning to the second <u>Chambless</u> factor, Sun Life does not dispute that it has the ability to pay an attorneys' fee award; instead, it argues that Levitian did not offer any evidence to meet his burden of proof with respect to this issue.  (Opp. Mem. at 4). While zealous advocacy is the hallmark of accomplished counsel, Sun Life's argument verges on the absurd.  First, as Levitian correctly points out, Sun Life conceded in prior briefing that it has the "ability to satisfy an award of fees."  (ECF No. 64 at 3 (quoting ECF No. 48 at 4)).  Moreover, the Court can take judicial notice that Sun Life is licensed to do business in New York, (see https://myportal.dfs.ny.gov/web/guest-applications/ ins.-company-search (last visited July 23, 2013)),[2] and therefore subject to minimum capital requirements, <u>see</u> N.Y. Ins. Law § 4202; has a book value of $65 million (Canadian) as of December 31, 2012, (http://cdn.sunlife.com/static/global/files/ Annual%20reports/2012/Annual_Report_2012_Subs_and_affiliates_en.pdf (last visited July 23, 2013)); and is a subsidiary or affiliate of Genworth, a Fortune 500 company with more than $100 billion in assets, (see www.genworth.com (last visited July 23, 2013)).  In any event, even if Levitian failed to make the requisite showing, "the Second Circuit has held that a defendant's ability to pay does not weigh heavily in favor of . . . an award." <u>Alfano v. CIGNA Life Ins. Co. of N.Y.</u>, No. 07 Civ. 9961 (GEL), 2009 WL 890626, at *2 (S.D.N.Y. Apr. 2, 2009) (citing <u>Lauder v. First UNUM Life Ins. Co.</u>, 284 F.3d 375, 383

---

[2]      The New York State Department of Financial Services maintains a company locator at this site.

(2d Cir. 2002)).  This factor consequently may not be favorable to Levitian, but it does not weigh against him.

              c.      <u>Deterrence Effect</u>

        Courts routinely find that granting fee awards deters plan administrators from making arbitrary and capricious decisions.  <u>See, e.g.</u>, <u>Winkler v. Metro. Life Ins. Co.</u>, No. 03 Civ. 9656 (SAS), 2006 WL 2850247, at *2 (S.D.N.Y. Sept. 28, 2006) ("substantial fee award will serve to deter both [defendant] and other insurers from disregarding proper procedures in deciding disability claims"); <u>Zervos v. Verizon N.Y., Inc.</u>, No. 01 Civ. 685 (GBD) (RLE), 2002 WL 31553484, at *3 (S.D.N.Y. Nov. 13, 2002) (attorney fee award "will deter defendants from arbitrary and capricious conduct in the future").

        Sun Life argues that the deterrence factor does not augur in favor of a fee award in this case because Sun Life discontinued paying benefits only after Levitian's former employer notified Sun Life that his termination was unrelated to his physical condition and that he had taken another position in the same industry.  (Opp. Mem. at 5).  As Judge Scheindlin has noted, however, "[t]he deterrence factor is not meant to deter plan administrators from repeating specific, wrongful conduct when faced with a similar set of factual circumstances.  Rather, it is to deter plan administrators from engaging in generally culpable conduct."  <u>Anderson v. Sotheby's, Inc.</u>, No. 04 Civ. 8180 (SAS), 2006 WL 2637535, at *4 (S.D.N.Y. Sept. 11, 2006).  Accordingly, the proper question to ask in analyzing this factor is whether granting Levitian a fee award would deter insurers

generally from denying legitimate benefit claims.  See Veltri v. Building Service 32B-J Pension Fund, No. 02 Civ. 4200 (HB), 2004 WL 856329, at *3 (S.D.N.Y. April 20, 2004).  Here, there is little doubt that it would.

Indeed, this is not a situation in which the defendant administrator "acted reasonably in evaluating and acting upon" plaintiff's claims, such that the deterrence "factor does not weigh in favor of awarding fees."  DeFelice v. Am. Intern. Life Assur. Co. of N.Y., No. 94 Civ. 8165 (AGS), 1996 WL 304542, at *2 (S.D.N.Y. June 5, 1996). Instead, Sun Life reached its decision based on a report that contained "seriously flawed" conclusions and relied on only selected evidence.  (Decision and Order at 9-10).  Indeed, "without any change of circumstances, Sun Life . . .  reverse[d] the prior determination of a permanent disability based solely on factors not given weight or even considered as relevant during the original evaluation."  (Id. at 9).  See Alfano, 2009 WL 890626, at *2 (noting that a fee award "serves to level the playing field, deterring unscrupulous or careless plan administrators, and – at a minimum – reducing any incentives insurance companies may have to wrongfully deny claimants benefits"); Winkler, 2006 WL 2850247, at *2 ("substantial fee award" is appropriate where the "Second Circuit held that [defendant] 'cherry-picked' the evidence [it] viewed as favorable"); Anderson, 2006 WL 2637535, at *4 ("fee award has important deterrent value in preventing other plan administrators from 'cherry picking' evidence in order to deny claims").  This factor therefore also weighs in Levitian's favor.

      d.     <u>Relative Merits of the Parties' Positions</u>

Sun Life concedes that this factor favors Levitian.  (Opp. Mem. at 5).

      e.     <u>Conferral of Common Benefit on Pension Plan Participants</u>

The final <u>Chambless</u> factor considers whether Levitian's action conferred a common benefit on other pension plan participants.  <u>Chambless</u> at 871.  Sun Life points out that Levitian's claim is an individual one and no other insureds will receive compensation as a result of his suit.  (Opp. Mem. at 5-6).  Thus, Sun Life contends, this factor weighs in its favor.  (<u>Id.</u>).

Levitian counters that Sun Life interprets the word "confer" too literally, citing cases in which courts have found that the fifth factor is satisfied by the mere deterrence of unwarranted denials of benefits.  (ECF No. 60 ("Memo of Law") at 10-11 (citing <u>Cohen v. Metro. Life Ins. Co.</u>, No. 00 Civ. 6112 (LTS) (FM), 2007 WL 4208979, at *3 (S.D.N.Y. Nov. 21, 2007); <u>Lijoi v. Continental Cas. Co.</u>, 414 F. Supp. 2d 228, 249 (E.D.N.Y. 2006); <u>Paese v. Hartford Life and Acc. Ins. Co.</u>, No. 02 Civ. 9778 (DC), 2004 WL 764760, at *10 (S.D.N.Y. Apr. 9, 2004))).

Although certain courts have discussed the deterrent effect of attorneys' fees in relation to the fifth factor, <u>see id.</u>, deterrence is expressly the subject of the third factor and, consequently, should not be considered again here.  <u>See</u> <u>Slupinski v. First Unum Life Ins. Co.</u>, 554 F.3d 38, 48 (2d Cir. 2009) (plaintiff "has not pointed to any common benefit beyond the deterrent effect that is taken into account in the third <u>Chambless</u> factor"); <u>Klepeis v. J&R Equipment, Inc.</u>, No. 10 Civ. 363 (CS) (PED), 2012

WL 410539, at *7 (S.D.N.Y. Feb. 9, 2012) (awarding attorneys' fees to plaintiff deters other plan fiduciaries from similar violations, but "does not confer a common benefit on a group of [p]lan participants"); Alfano, 2009 WL 890626, at *2 ("other than the general deterrent effect already counted in plaintiff's favor in connection with the third factor, this case confers no common benefit").

Here, there is no question that Levitian's success may deter other plan administrators from engaging in arbitrary and capricious denials.  In any event, even if this factor did not weigh in Levitian's favor, that would not preclude an award of attorneys' fees.  See Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 299 (2d Cir. 2004) ("failure to satisfy the fifth Chambless factor does not preclude an award of attorneys' fees").

* * *

In sum, Levitian achieved a degree of success on the merits.  Additionally, at least three of the five Chambless factors weigh in his favor.  For these reasons, among others, he is entitled to recover his reasonable attorneys' fees.

     3.    <u>Reasonableness of Requested Fees</u>

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  Fox v. Vice, __ U.S. __, 131 S.Ct. 2205, 2216 (2011).  Accordingly, "a request for attorneys' fees should not result in a second major litigation."  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

To determine the reasonable attorneys' fees to which a party is entitled, a court must calculate the "presumptively reasonable fee," often referred to as the "lodestar."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections, 522 F.3d 182, 183, 189-90 (2d Cir. 2008).  The presumptively reasonable fee is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate.  See Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

### a.    Reasonable Hourly Rate

A fee applicant bears the burden of "produc[ing] satisfactory evidence" that the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Pearson Educ., Inc. v. Vergara, No. 09 Civ. 6832 (JGK) (KNF), 2010 WL 3744033, at *6 (S.D.N.Y. Sept. 27, 2010) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  In exercising its "considerable discretion" as to attorneys' reasonable hourly billing rates, a court should determine the rates that a "paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Additionally, the Court may rely on its own knowledge of private firm hourly rates.  Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

Although a court "should generally use the prevailing hourly rate in the district where it sits," it "may adjust the base hourly rate to account for other case-specific

14

variables." <u>Arbor Hill</u>, 522 F.3d at 184.  These case-specific variables include twelve

factors set forth by the Fifth Circuit in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488

F.2d 714 (5th Cir. 1974), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Blanchard v. Bergeron</u>, 489 U.S.

87 (1989):

> (1) the time and labor required; (2) the novelty and difficulty of
> the questions; (3) the skill requisite to perform the legal service
> properly; (4) the preclusion of employment by the attorney due
> to acceptance of the case; (5) the customary fee; (6) whether the
> fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and the
> results obtained; (9) the experience, reputation, and ability of
> the attorneys; (10) the "undesirability" of the case; (11) the
> nature and length of the  factors," professional relationship with
> the client; and (12) awards in similar cases.

<u>Hensley</u>, 461 U.S. at 430 n.3 (citing <u>Johnson</u>, 488 F.2d at 717-19); <u>see</u> <u>Arbor Hill</u>, 522

F.3d at 186 n.3 (citing the <u>Johnson</u> factors).  A district court need not "recite and make

separate findings as to all twelve <u>Johnson</u> factors," provided it "takes each into account in

setting the attorneys' fee award." <u>G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.</u>, 894

F. Supp. 2d 415, 428 (S.D.N.Y. 2012) (internal citations and quotations omitted).

 In this action, Levitian is represented by Riemer & Associates LLC

("Riemer LLC"), a New York law firm that specializes in disability insurance law.  (<u>See</u>

Riemer & Associates LLC, http://www.riemerlawfirm.com (last visited July 23, 2013)).

Levitian seeks to recover fees for six Riemer LLC timekeepers:  a partner, two senior

associates, a junior associate, and two senior paralegals.

The most highly compensated attorney for whom Levitian seeks to recover fees is Scott M. Riemer, the firm's founding partner.  Mr. Riemer graduated from the University of Michigan Law School in 1983, and has focused his practice on ERISA litigation for nearly twenty years.  (Riemer Affirm. ¶¶ 2-3).  During this time, Mr. Riemer has written several articles and given various lectures concerning ERISA and litigation of long-term disability claims.  (Id. ¶¶ 10-11).  Levitian seeks to be reimbursed for Mr. Riemer's time at the rate of $600 per hour – the rate that Mr. Riemer currently charges over 170 clients.  (Id. ¶ 30).

Levitian also seeks to recover fees at the rate of $340 per hour for two senior Riemer LLC associates who worked on this matter:  Joseph Anci and Dean Solomon.  (Id. ¶ 30).  Mr. Anci graduated from Brooklyn Law School and Mr. Solomon from the University of Michigan Law School; both have more than five years' litigation experience.  (Id. ¶¶ 17-24).

Levitian seeks reimbursement for the time of a junior associate, Sharon H. Lee, at the rate of $275 per hour.  (Id. ¶¶ 25-26, 30).  Ms. Lee graduated from Syracuse University College of Law in 2009, and has been an associate at Riemer LLC for more than two years.

Finally, Levitian requests reimbursement for the time of two senior paralegals, Ellen Mayer and Audrey Beerman.  (Id. ¶¶ 27-28).  Ms. Mayer has over fourteen years of paralegal experience, and Ms. Beerman has worked as a paralegal at

Riemer LLC for more than four years.  (Id. ¶¶ 27-28).  Levitian requests a rate of $200 per hour for their time.  (Id. ¶ 30).

Sun Life contends that Riemer LLC's rates are excessive and unreasonable, relying on Alfano, 2009 WL 890626, a 2009 case in which then-District Judge Lynch awarded fees at the rate of $450 per hour for Mr. Riemer's time.  (Opp. Mem. at 12-13 (citing Alfano, at *4)).  More recently, in Taaffe v. Life Ins. Co. of N. Am., 769 F. Supp. 2d 530, 543 (S.D.N.Y. 2011), I awarded the plaintiff $560 per hour for Mr. Riemer's time, noting that "the fact that over 150 clients have paid him at [that rate] since 2009 [was] a strong indication of what private parties believe is the 'reasonable' fee to be awarded."  Taaffe, 769 F. Supp. 2d at 543 (quoting Crescent Publ'g Group, Inc. v. Playboy Enters., Inc., 264 F.3d 142, 151 (2d Cir. 2001)).  Although Mr. Riemer's rates have climbed nearly ten percent since then, the logic of awarding what private clients will pay is equally applicable.  Accordingly, I find that his $600 per hour rate is reasonable. See Barrett v. Hartford Life and Acc. Ins. Co., No. 10 Civ. 4600 (AKH), ECF Nos. 41, 42, 43, 44, 49, 2012 WL 6929143 (S.D.N.Y. Nov. 9, 2012) (awarding attorneys' fees at the rates requested, including $600 per hour for Mr. Riemer).

I similarly find that the requested hourly billing rates for Messrs. Anci and Solomon are reasonable in light of their experience, the claims involved in this case, prevailing rates in the field of employee benefits law, and the Johnson factors.  Indeed, at least one judge in this District has awarded attorneys' fees for the work of these attorneys at precisely the rate Levitian requests.  See Zoller v. INA Life Ins. Co. of N.Y., No. 06

17

Civ. 0112 (RJS), ECF Nos. 86, 90, 99, 100, 2008 WL 3927462 (S.D.N.Y. Aug. 25, 2008)

(awarding $340 per hour).

          I further find that the reasonable hourly billing rate for Ms. Lee is $225 per

hour and that the reasonable hourly billing rate for the work of Ms. Mayer and Ms.

Beerman is $180 per hour.  Ms. Lee graduated from law school in 2009 and has been an

associate at Riemer LLC for only two years.  In 2008, Judge Lynch observed that "courts

have awarded amounts ranging from $125 to $200 per hour for attorneys with less than

three years' experience."  Torres v. City of N.Y., No. 07 Civ. 3473 (GEL), 2008 WL

419306, at *2 (S.D.N.Y. Feb. 14, 2008).  Since then, however, billing rates obviously

have risen.  Moreover, Ms. Lee has more than three years of legal experience.  I therefore

find that $225 per hour is a reasonable billing rate for her.

          Finally, although Ms. Mayer and Ms. Beerman are senior paralegals and

have significant experience, their billing rate should not be commensurate with the rates

charged at Riemer LLC for associate attorneys.  Accordingly, I find that $180 per hour is

a reasonable billing rate for Ms. Mayer and Ms. Beerman.  See Zoller, ECF Nos. 86, 90,

99, 100, 2008 WL 3927462 (awarding $180 per hour for the work of Ms. Mayer and Ms.

Beerman); see also Tatum v. City of N.Y., No. 06 Civ. 4290 (PGG) (GWG), 2010 WL

334975, at *5 (S.D.N.Y. Jan. 28, 2010) ($125 per hour is a reasonable paralegal rate);

Hnot v. Willis Group Holdings Ltd., No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at *3

(S.D.N.Y. Apr. 7, 2008) ($150 per hour is a reasonable rate for paralegals in this District).

b.    <u>Hours Reasonably Expended</u>

Having assessed the reasonableness of Riemer LLC's hourly rates, I turn to

the reasonableness of the hours expended by its timekeepers.  To enable a court to

determine the reasonableness of the hours expended, a party seeking an award of

attorneys' fees must submit contemporaneous time records indicating the number of

hours expended and the nature of the work done.  <u>See Lewis v. Coughlin</u>, 801 F.2d 570,

577 (2d Cir. 1986); <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136,

1148 (2d Cir. 1983); <u>Puglisi v. Underhill Park Taxpayer Ass'n</u>, 964 F. Supp. 811, 817

(S.D.N.Y. 1997).  In keeping with this requirement, Riemer LLC has furnished the Court

with a spreadsheet detailing its time entries related to this action.  (<u>See</u> Riemer Affirm.

Ex. D; Riemer Reply Affirm. Ex. H).  Those time records reflect a total of approximately

841.25 hours billed, including 252.15 hours attributable to Mr. Riemer, 84.2 hours

attributable to Mr. Anci, 193.3 hours attributable to Mr. Solomon, 253.25 hours

attributable to Ms. Lee, 48.7 hours attributable to Ms. Mayer, and 9.65 hours attributable

to Ms. Beerman.  (<u>See</u> Riemer Affirm. ¶ 37 & Ex. D; Riemer Reply Affirm. ¶ 3 & Ex. H).

Sun Life has identified several areas in which Riemer LLC's hours

allegedly were excessive, arguing that the total number of hours claimed by Levitian

therefore should be reduced.  For example, Sun Life argues that Riemer LLC overbilled

for time spent on the drafting of the complaint, discovery, the mediation, the summary

judgment motions, Levitian's motion to amend, and Levitian's appeal.  (Opp. Mem. at 7-

11).  Sun Life further complains that Levitian's counsel engaged in block billing.  (<u>Id.</u> at

11).

To account for these and other issues, Riemer LLC has offered to take a voluntary ten percent haircut. Having reviewed the time records submitted by Riemer LLC, I find that the hours billed on this case were excessive, even when reduced by ten percent. For example, Messrs. Riemer and Solomon devoted more than thirty-four hours to drafting the reply brief in support of Levitian's summary judgment motion. (Riemer Affirm. ¶ 37). Attorneys with their experience should not have needed this much time to draft a ten-page reply, which consisted of bullet points refuting claims made by Sun Life. (See ECF No. 36). Indeed, the same attorneys spent more than one hundred hours preparing Levitian's initial summary judgment papers and, consequently, should already have been well-versed as to the relevant facts and law.

Additionally, Levitian seeks reimbursement for more than thirty-seven hours that Mr. Riemer spent preparing for, and attending, the oral argument of his appeal before the Second Circuit. (Riemer Affirm. ¶ 37). This is in addition to more than seventeen hours billed by Ms. Lee for oral argument. (Id. ¶ 37). Here, again, the hours billed were excessive when one considers (i) Mr. Riemer's familiarity with the case and the applicable law; (ii) the ninety-three hours he himself spent on the appellate briefs; and (iii) the straightforward nature of the issues on appeal. (Id. ¶ 37). See Wilkett v. I.C.C., 844 F.2d 867, 878 (D.C. Cir. 1988) (fifty-one hours billed for oral argument deemed excessive because the issues "were not especially complicated," and the attorney arguing the appeal had written the brief and "spent almost [sixty-five] hours drafting the reply brief two months prior to oral argument").

Perhaps most glaringly, Riemer LLC timekeepers spent more than thirty-six hours to prepare the present motion for attorneys' fees and pre-judgment interest, and more than thirty-three hours to draft Levitian's reply in support of that motion and "to dialogue with Sun Life over the proper calculation of the unpaid benefit." (Riemer Affirm. ¶ 37; Riemer Reply Affirm. ¶¶ 2-3). These time charges clearly are excessive when one considers the fact that the memoranda of law submitted on Levitian's behalf are substantially similar to those filed in support of Levitian's earlier motion to alter judgment, as well as the memoranda of law submitted by Riemer LLC in support of a fee application in at least one other case. (Compare Memo of Law at 4-11 with ECF No. 44 at 5-10, and Taaffe, No. 09 Civ. 6710, ECF No. 18 at 6-17).[3]

In reducing the total number of hours awarded, a "district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotations omitted); accord Torres v. Gristede's Oper. Corp., __ F. App'x __, 2013 WL 2257859, at *2 (2d Cir. May 22, 2013). Using this form of "rough justice," judges in this District have imposed varying percentage reductions. See, e.g., Days Inn Worldwide, Inc. v. Amar Hotels, Inc., No. 05 Civ. 10100 (KMW) (KNF), 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008)

---

[3]   This is not the first time that Riemer LLC timekeepers have billed excessive amounts of time for drafting an attorney fee application that is substantially similar to the one submitted in another case. See Taaffe, 769 F. Supp. 2d at 544 ("Riemer's memoranda of law in this case largely mirror the memoranda it submitted in Zoller, at least with respect to the application for attorneys' fees."). There is nothing wrong with reusing portions of prior submissions where appropriate, but the decision to do so should be reflected in the number of hours billed to the client.

(reducing attorneys' fee by seventy-five percent when "a substantial amount of work performed . . . was redundant and unnecessarily duplicative"); Lide v. Abbott House, No. 05 Civ. 3790 (SAS), 2008 WL 495304, at *1-2 (S.D.N.Y. Feb. 25, 2008) (reducing attorney fee award by thirty percent for various reasons, including "excessive and unnecessary hours spent on indisputably straightforward tasks"); Winkler v. Metro. Life Ins. Co., No. 03 Civ. 9656 (SAS), 2006 WL 2347826, at *2 (S.D.N.Y. Aug. 10, 2006) (reducing lodestar figure by twenty percent for "excessive charges and lack of delegation").

   In this case, having reviewed the time charges in considerable detail, I find that a thirty percent reduction in the hours billed by Riemer LLC is appropriate.

   Riemer LLC's indicated time charges total $326,953.75, consisting of $316,653.75 for its work through the filing of its motion for attorneys' fees, and an additional $10,300.00 for its work on the reply papers in support of that motion.  (Riemer Affirm. ¶¶ 37-38; Riemer Reply Affirm. ¶ 3).  After making the foregoing adjustments to the timekeepers' billing rates and Riemer LLC's total billings, the legal fees that I recommend be awarded are as follows:

| Timekeeper | Requested Rate | Adjusted Rate | Hours Requested | Hours Reduced by 30% | Total |
|---|---|---|---|---|---|
| Scott Riemer | $600.00 | $600.00 | 252.15 | 176.51 | $105,906.00 |
| Joseph Anci | $340.00 | $340.00 | 84.2 | 58.94 | $20,039.60 |
| Dean Solomon | $340.00 | $340.00 | 193.3 | 135.31 | $46,005.40 |

| | | | | | |
|---|---|---|---|---|---|
| Sharon Lee | $275.00 | $225.00 | 253.25 | 177.28 | $39,888.00 |
| Ellen Mayer | $200.00 | $180.00 | 48.7 | 34.09 | $6,136.20 |
| Audrey Beerman | $200.00 | $180.00 | 9.65 | 6.76 | $1,216.80 |
| | | | | **Total Award** | $219,192.00 |

4.      <u>Reasonable Cost and Expenses</u>

In addition to attorneys' fees, Levitian seeks reimbursement for out-of-pocket costs in the amount of $693.76.  (Riemer Affirm. ¶ 39 & Ex. E).  ERISA mandates an award of reasonable costs.  29 U.S.C. § 1132(g)(2)(D).  Since Sun Life does not appear to dispute the costs Levitian claims, Levitian should be awarded $693.76 in costs.

B.      <u>Prejudgment Interest</u>

The Decision and Order directed that the Plan "reinstate Levitian's benefits and award back benefits with interest thereon," but did not specify the rate to be applied. (Decision and Order at 11).

Choosing a prejudgment interest rate is a matter "confided to the district court's broad discretion." <u>S.E.C. v. First Jersey Securities, Inc.</u>, 101 F.3d 1450, 1476 (2d Cir. 1996).  Nevertheless, in determining the appropriate interest rate, the Court must take care to ensure that "[a]wards of prejudgment interest . . . not result in over-compensation of the plaintiff." <u>Wickham Contracting Co. v. Local Union No. 3 IBEW</u>, 955 F.2d 831, 834 (2d Cir. 1992).  Levitian asks the Court to adopt New York's statutory prejudgment interest rate of nine percent because "the Plan is silent on the interest rate . . . , and there is no set interest rate dictated by ERISA."  (Memo of Law at 19 (citing N.Y. C.P.L.R.

23

§ 5004)).  Sun Life, on the other hand, asks the Court to use the substantially lower

federal post-judgment interest rate set forth in 28 U.S.C. § 1961, which is based on the

one-year constant maturity Treasury yield.  (Opp. Mem. at 13).

There is some logic behind Sun Life's request.  After all, interest rates in

recent years have become extraordinarily low.  See Barrett, 2012 WL 6929143, at *2

("[i]nterest rates have been at historic lows for the past three years").  As the Second

Circuit observed in Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 140 (2d Cir.

2000), however, it is "within the discretion of the district court to take into account the

rate at which . . . a plaintiff would have paid to borrow money rather than the rate at

which she would have lent it to the government."

Here, because the amount that Sun Life owed Levitian increased over time,

it is appropriate to calculate interest from the mid-point of the 1,644-day period for which

interest is owed.[4]  See Barrett, 2012 WL 6929143, at *3.  At that midpoint, which is

August 5, 2010, the rate for thirty-year fixed-rate mortgages was approximately 4.5

percent per annum.  (See mortgage-x.com/general/national_monthly_average.asp?y=2010

(last visited July 23, 2013)).  Accordingly, if Levitian had sought to refinance a house to

secure approximately $175,000 (half the back benefits eventually owed), he would have

paid this rate.  In these circumstances, it would be inequitable to employ the interest rate

that Sun Life urges, which is unrealistically low.

---

[4]        Levitian calculates the period from May 1, 2008, to October 31, 2012, for which
prejudgment interest is owed, to be 1,652 days.  I find that the period consists of 1,644 days,
which results in a calculation slightly different than that set forth in Levitian's papers.  (See
Riemer Affirm. ¶ 42).

As Judge Lynch reasoned in <u>Alfano</u>:

> [W]hile there is no applicable federal statute establishing a prejudgment interest rate, New York has adopted a statutory prejudgment interest rate of 9%, thus making an objective legislative judgment that 9% is an appropriate rate.  Although [defendant] argues that the Treasury rate constitutes a more appropriate rate, there is no reason to think that that rate more accurately captures the time value of money in New York, or the true loss to plaintiff, particularly given the New York State Legislature's determination otherwise.

2009 WL 890626, at *7 (internal citations omitted).

Interestingly, at the time Judge Lynch decided <u>Alfano</u> (April 2009), interest rates for thirty-year fixed-rate mortgages were substantially the same as in August 2010. (<u>See</u> mortgage-x.com/general/national_monthly_average.asp?y=2009 (last visited July 23, 2013)).  Accordingly, under <u>Alfano</u>, Levitian should be awarded prejudgment interest at the rate of nine percent per annum.

## IV.   Conclusion

For the reasons set forth above, I recommend that Levitian's motion be granted in part, and that the Court award him attorneys' fees in the amount of $219,885.76, as well as pre-judgment interest from August 5, 2010, at the rate of nine percent.

## V.   <u>Notice of Procedure for Filing of Objections to this Report and Recommendation</u>

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  <u>See also</u> Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of Court, with courtesy copies delivered to

25

the chambers of the Honorable George B. Daniels and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:      New York, New York
            July 24, 2013


                                        _____
                                        FRANK MAAS
                                        United States Magistrate Judge


Copies to All Counsel via ECF

26